IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARMEN JORDA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DeTOMASO AUTOMOBILI HOLDINGS, N.A. LLC a Delaware Limited Liability Company; SUNG FUNG CHOI (a/k/a NORMAN CHOI) an individual,<br><br>Defendants. | Case No.: 23-cv-09809 (ALC) |

**STATUS REPORT BY PLAINTIFF CARMEN JORDA FOLLOWING
JURISDICTIONAL DISCOVERY (ECF NO. 98.)**

## STATUS REPORT FOLLOWING JURISDICTIONAL DISCOVERY

Plaintiff Carmen Jorda hereby submits her statement discussing settlement status, additional evidence supporting personal jurisdiction, and unresolved discovery issues.[1]

### I.   PROCEDURAL POSTURE AND SETTLEMENT STATUS

This case was originally filed in the Central District of California on June 14, 2023. (ECF No. 1.) The Honorable Percy Anderson transferred the case to the Southern District of New York on October 31, 2023. (ECF No. 29.) In so ordering, the Court specifically found that Defendants "could be subject to jurisdiction in the Southern District of New York":

> **The Court, . . . has no difficulty concluding that a "substantial part of the events or omissions giving rise to the claim" occurred in the Southern District of New York.** Plaintiff negotiated with Berris, established her relationship with DeTomaso, and executed the first contract at issue in this case in New York. Plaintiff traveled to New York to meet Choi – the only time she ever met him during the course of her work for DeTomaso. She met with Choi several times during this visit, including at Choi's New York residence, and accompanied him to perform certain contractual duties for DeTomaso.
>
> […]
>
> Moreover, although the Court recognizes that the jurisdiction issues will need to be resolved by the court to hear this matter in the Southern District of New York, after reviewing the pleadings, declarations and evidence submitted in this matter, as well as in the case pending in the Southern District of New York, **the Court believes that all three defendants in this matter – DeTomaso, Berris and Choi could be subject to jurisdiction in the Southern District of New York**. The Court therefore concludes that this

---

[1] Plaintiff provided counsel for Defendants a draft of a Joint Status Report that contained a separate section for "Plaintiff's Statement." The statement, which has now been incorporated into this Report, discusses the new facts and evidence supporting personal jurisdiction following the parties' jurisdictional discovery ordered by the Court (ECF No. 98). Defendants objected to Plaintiff's statement and refused to join in the filing of a status report that included analysis of the newly discovered jurisdictional evidence. Accordingly, Plaintiff was required to separately submit this Status Report on her own. (Liu Decl. iso Plf.'s Status Report ["Liu Decl."] ¶¶ 9-10, Ex. I.)

> **action could have been brought in the Southern District of New York.**

(J. Anderson Order dated Oct. 31, 2023 (ECF No. 29), at 4 (emphasis added, footnote omitted).)[2]

On November 6, 2023, the case was assigned to this Court. (ECF No. 30.) Plaintiff filed her operative Second Amended Complaint ("SAC") on December 18, 2023. (ECF No. 41.) On January 16, 2024, Defendants filed a Motion to Dismiss the SAC for lack of personal jurisdiction. (ECF Nos. 56, 57.) Plaintiff filed an Opposition to the Motion to Dismiss on February 13, 2024. (ECF Nos. 64-66.) Defendants filed a Reply on February 27, 2024. (ECF No. 68.)

On May 2, 2025, the Court *granted* Defendants' Motion to Dismiss without prejudice while simultaneously granting limited jurisdictional discovery to determine whether the Court has proper jurisdiction over Defendants. (ECF No. 92.) The Court did not state the grounds for dismissal nor make any findings regarding personal jurisdiction. Rather, it ordered the parties to submit a joint status report and proposed discovery plan and to discuss the status of settlement discussions. (*Id.*) On May 16, 2025, Plaintiff filed a Motion for Clarification, or alternatively, Reconsideration regarding the May 2nd Order, which sought clarification for the grounds of dismissal, or alternatively, for reconsideration of the two separate court rulings from Judge Anderson (C.D.Cal.) and Judge Subramanian (S.D.N.Y.) (in the related Berris Case) that found personal jurisdiction in

---

[2] "It is only proper to transfer venue to a court where the case originally 'could have been brought' (i.e., the 'transferee court' must have proper subject matter jurisdiction, proper venue, and be able to exercise personal jurisdiction.)." *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001) (citing 28 U.S.C. § 1406(a)) (emphasis added); *see also Yellow The Label, LLC v. Yellow Label Co., LLC*, No. 8:25-CV-01145-DOC-MAR, 2025 WL 2428467, at *2 (C.D. Cal. July 25, 2025) (quoting *Metz v. U.S. Life Ins. Co. in the City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) [**"Transfer is only appropriate to a district where personal jurisdiction, subject matter jurisdiction, and proper venue are maintained."**]).

Therefore, if this Court finds that it *lacks* personal jurisdiction over Defendants, Plaintiff must return to the Central District of California and request that it revisit its transfer order.

New York over Choi and De Tomaso. (ECF Nos. 93, 94.) The parties submitted their Joint Status Report and Jurisdictional Discovery Plan on May 23, 2025. (ECF No. 95.)

The Court issued an order on July 9, 2025, detailing the scope of jurisdictional discovery to be performed by October 9, 2025. (ECF No. 98.) The Court again ordered the parties to submit a joint status report regarding settlement but did not specify any further briefing on the issue of personal jurisdiction to be included in the report. (*Id.*) The Court has also not yet ruled on Plaintiff's Motion for Clarification of the Order dated May 2, 2025.

The parties engaged in limited jurisdictional discovery, but disputes have arisen regarding document production and discovery requests from both sides. On October 6, 2025, Plaintiff submitted a letter brief seeking an Informal Discovery Conference ("IDC") and potential extension of the discovery cutoff to resolve such disputes. (ECF No. 101.) Given the unresolved issues of personal jurisdiction, the parties have not made meaningful progress in settlement discussions, as Defendants have asserted that the Court lacks personal jurisdiction over them. Notwithstanding these procedural uncertainties, Plaintiff made a written offer of settlement on October 9, 2025. To date, however, the parties have not reached a settlement. (Liu Decl. ¶ 8.)

II. **PLAINTIFF HAS MET HER BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER CHOI AND DE TOMASO**

As fully briefed in her Opposition to Defendants' Motion to Dismiss (ECF No. 64) and Motion for Clarification (ECF Nos. 93, 94), Plaintiff has alleged an abundance of undisputed facts in support of both general and specific jurisdiction over Defendants. The Court should thus reconsider its Order granting Defendants' Motion to Dismiss and instead deny it on the grounds of existing as well as new facts supporting personal jurisdiction following the parties' discovery as explained below.

3

### A.   There is General Jurisdiction Over Choi Who Primarily Resides at 35 Hudson Yards in New York City

"General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are substantial, continuous, and systematic." *Bonita Fabrics, Inc. v. Anand*, No. 12 MISC. 408, 2014 WL 406837, at *4 (S.D.N.Y. 2014); *see also In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 134 (S.D.N.Y. 2021) (citing *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) ["A Court has general personal jurisdiction over a defendant where the individual is domiciled."]). In other words, "[g]eneral jurisdiction exists when a defendant is 'essentially at home' in the forum state." *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 507 (S.D.N.Y. 2023) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

"An individual is domiciled in the most recent place where he physically resided and intended to remain." *Gershowitz v. Griv*, No. 24-CV-1915 (PAE) (OTW), 2025 WL 2202981, at *2 (S.D.N.Y. July 1, 2025), *report and recommendation adopted*, No. 24 CIV. 1915 (PAE)(OTW), 2025 WL 2170773 (S.D.N.Y. July 31, 2025) (citing *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)); *see also Quinio v. Aala*, 344 F. Supp. 3d 464, 480 (E.D.N.Y. 2018) (Domicile may be established "by determining whether a defendant intended to make New York his or her 'fixed and permanent home.'"). "Domicile should be determined by reference to objective facts rather than solely by a party's subjective statement of intent." *Kinsley v. Signorelli*, No. 92 CIV. 6421 (LBS), 1993 WL 127965, at *2 (S.D.N.Y. 1993) (citing *Willis v. Westin Hotel Co.*, 651 F.Supp. 598, 603 (S.D.N.Y. 1986.) "An individual's residence at the time a lawsuit is commenced provides prima facie evidence of his domicile." *Id.*

There is no question that Choi is "essentially at home" of the State of New York. Choi admitted "that in 2023 and 2024 he spent more time physically in New York than in Hong Kong." (Liu Decl. Ex. A [Choi RFA Resp. No. 20].) During his deposition in the Berris case, Choi admitted that he purchased a "*home*" at 35 Hudson Yards in New York City. (Liu Decl. Ex. G [Choi Dep. Tr. at 123:11-24 ("Q: Edith Chan Yang is the real estate broker who assisted you in purchasing *your home here in Hudson Yards*, right, sir? [¶] A. Yes.") (emphasis added)].) Choi confirmed that while he "cannot list every single occasion he has stayed at the apartment at 35 Hudson Yards" over the past two years, he has *at least* resided there during his daughter's ballet programs that took place over 88 days in 2023, 262 days in 2024, and 142 days in 2025 (out of a total of 254 days as of September 11, 2025). (Liu Decl. Ex. C [Choi Interrog. Resp. No. 21].) Indeed, Choi's daughter's ballet classes are year-round, and thus Choi has resided primarily in New York in the past few years when these classes are in session—including on October 31, 2023, when the case was transferred to the Southern District of New York, and December 7, 2024, when Choi's deposition was taken in the Berris Action. (*See id.*; Liu Decl. ¶ G [Choi Dep. Tr. at 357:25-358:26].)

Although Defendants contend that Choi is a Hong Kong resident, the evidence shows that he obtained an O-1 visa with the specific intent of immigrating to New York. In April 2020, Choi sought assistance from immigration lawyers at the New York office of Wildes & Weinberg P.C. to permanently move to New York with his family, stating: "After considerable amount of thinking, planning and discussion with family, we would like to immigrate to US."

> From: Norman Choi <normansfchoi@gmail.com>
>
> 7/8/23,
>
> Re: US immigration
> Case 1:23-cv-04305-AS   Document 48-8   Filed 09/12/23   Page 6 of 7
>
> Sent: Thursday, April 2, 2020 9:51 PM
> To: Michael Wildes <michael@wildeslaw.com>
> Subject: US immigration
>
> Hi Michael
>
> My name is Norman Choi and I'm an entrepreneur from HK. After considerable amount of thinking, planning and discussion with family, we would like to immigrate to US. We are a family of three, my wife and our 7 years old daughter.

(Pottier Decl. iso Opp. MTD, Ex. E [ECF No. 64-6] ("Pottier Decl.").)

Choi confirmed that he engaged various New York firms to assist with the successful processing of his visa application and that he "is the current holder of an O-1 Visa which was issued on January 15, 2025 and expires on January 1, 2028." (Liu Decl. Ex. C [Choi Resp. Interrog. Nos. 7, 15]; Ex. A [Choi Resp. RFA No. 6].) Given that Choi primarily resides in New York for the majority of the time over the past few years and has also stated his intent to immigrate to New York, the Court should find that he is domiciled in New York and properly subject to general jurisdiction under C.P.L.R. § 301.

### B. The Berris Court Has Recently Reaffirmed Its Findings of Specific Jurisdiction Over De Tomaso and Choi

In the Berris Action, Judge Subramanian previously found that both prongs under C.P.L.R. § 302 were satisfied to support long-arm jurisdiction over De Tomaso and Choi, regarding Berris's breach of contract, wrongful discharge, and other related claims. (Pottier Decl. Ex. C (ECF No. 64-6); Ex. D, 17:6-7 (ECF No. 64-5) ("So as to personal jurisdiction, the motions to dismiss will

6

be denied.").) As to the first prong, Judge Subramanian found that Choi and De Tomaso had purposefully availed themselves of the privilege of conducting activities within New York by engaging in dozens of business meetings in the New York relating to De Tomaso's business. (Pottier Decl. Ex. D at 17:14-18:16 (citing *Suntree Int'l Corp v. Rossi*, 2021 WL 5701407, at *3 (E.D.N.Y. 2021)). Judge Subramanian found that the second prong was "easily satisfied" because Berris's claims arising from (1) *Choi's failure to pay Berris for his work on DeTomaso*; and (2) Berris's forced resignation—had an articulable nexus to Choi's New York contacts. (*Id.* at 18:17-19:11 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012)). These claims by Berris arise from the same operative facts, alleged acts and omissions, as those alleged by Jorda, which are based on Choi and De Tomaso's similar failure to pay Jorda for work that she performed for De Tomaso in New York during the same time period.

Moreover, in a new ruling, the Berris Court also found that the same facts supported jurisdiction for Berris's defamation claim against Choi:

> **Choi clearly transacted business in New York.** Although his family "principally reside[s] in ... Hong Kong," **he comes to New York, where he owns a condominium, whenever business requires it.** Dkt. 168-3 at 123, 357–58. As defendants argued vigorously when it came to Berris's wrongful-discharge claim, Berris and Choi "worked and conducted company operations very frequently from New York." *See* Dkt. 138 at 18 ("New York has more contacts with both parties, and a greater concern with the issues in this litigation.").

*Berris v. Choi*, No. 1:23-CV-04305 (AS), 2025 WL 2548743, at *11 (S.D.N.Y. Sept. 4, 2025) (emphasis added).

The Court should thus follow the Berris Court's rulings and find that personal jurisdiction exists as to Choi and De Tomaso because the disputed contract claims arise from Defendants' transactions with New York.

7

## C. There is Specific Jurisdiction Over De Tomaso Having Negotiated, Executed, and Entered Into the Agreements with Jorda in New York

"To establish personal jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(1), [a plaintiff] must show (1) that the defendants transacted business within New York and (2) that the claim arises from that transaction." *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05-CV-6893(MBM), 2006 WL 1147963, at *8 (S.D.N.Y. 2006) (citing *Agency Rent-A-Car Sys., Inc. v. Grand Rent a Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996))."A non-domiciliary corporation transacts business within a state when it 'purposefully avails [itself] of the privilege of conducting activities within [the state], thus invoking the benefits and protections of its laws.'" *Id.* (quoting *CutCo Indus. Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

"[C.P.L.R. §] 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction at the claim asserted." *Arthur v. Orchestrate Bus. LLC*, No. 24-CV-02985 (MMG), 2025 WL 2201067, at *5 (S.D.N.Y. 2025) (citation omitted, emphasis added). Where a disputed contract with a defendant is "negotiated, consummated and executed in this state, the Court has *in personam* jurisdiction over [such a defendant]." *See Computer Horizons Corp. v. Knauer*, 483 F. Supp. 1272, 1273 (S.D.N.Y. 1980). Indeed, "[t]he clearest example of the type of case where courts would apply long-arm jurisdiction, … was where a defendant was physically present at the time the contract was entered into." *Triad Sec. Corp. v. Mfrs. Indem. & Ins. Co. of Am.*, No. 93 CIV. 8019 (LMM), 1994 WL 330395, at *3 (S.D.N.Y. 1994); *see also Northland Paper Co. v. Mohawk Tablet Co.*, 271 F.Supp. 763, 769 (S.D.N.Y. 1967) (finding personal jurisdiction in breach of contract case where "substantial part" of contract negotiations took place in New York.).

"Thus under § 302(a)(1) this court may exercise jurisdiction over defendant in either one of two situations…. First, personal jurisdiction exists if defendant entered into a contract to provide goods and services in the state and plaintiff's cause of action arises from the contract. Second, the requirements of § 302(a)(1) are satisfied if defendant transacts business within the state and the cause of action arises from his in-state business transactions." *Norwich Eaton Pharms., Inc. v. Langlume*, No. 88-CV-974, 1989 WL 92046, at *2 (N.D.N.Y. 1989) (citations omitted).

Here, the agreements between De Tomaso and Plaintiff were negotiated, executed, and entered into by the parties in New York in September 2021. (*See* Jorda Decl. iso Opp. MTD ¶¶ 3-5, 11 [ECF No 648-8] ("Jorda Decl.").) The agreements governed Jorda's services that were performed in New York, and which are subject to her claims for breach of payment obligations by Defendants in this lawsuit. Accordingly, the Court should find specific jurisdiction based on the fact that the disputed agreements were negotiated and entered into in New York.

**D.   Plaintiff's Contracted Services Were Performed in New York and De Tomaso Transacted with Multiple New York-Based Companies**

Furthermore, it is undisputed that Plaintiff's contracted services were performed in New York. Defendants admit that De Tomaso issued a press release on or around September 15, 2021, announcing its engagement with Jorda, entitled "De Tomaso Welcomes Carmen Jorda," which stated: "We are pleased to announce that Carmen Jorda has officially joined the De Tomaso family as a factory Development and Scuderia De Tomaso Racing Driver." (Jorda Decl. ¶ 4, Ex. B; Liu Decl. Ex. D [DeTomaso RFA Resp. No. 5].) Defendants admit that Jorda met with a De Tomaso test driver in New York City. (Jorda Decl. ¶ 10; Liu Decl. Ex. D [DeTomaso RFA Resp. No. 20].) Defendants admit that Jorda engaged in promotional photoshoot for De Tomaso in New York City on September 7, 2021. (Jorda Decl. ¶ 10; Liu Decl. Ex. D [DeTomaso RFA Resp. No. 21]; Liu

9

Decl. Ex. F [DeTomaso Interrog. Resp. No. 24) Finally, Defendants admit that Berris served as CEO for DeTomaso from September 3, 2020 through May 2022, during which he "occasionally conducted De Tomaso business in New York," including engaging in at least 10 business meetings on behalf of the company in New York. Liu Decl. Ex. D [DeTomaso RFA Resp. Nos. 6, 11, 16]; Liu Decl. Ex. F [DeTomaso Interrog. Resp. No. 23].)

Additionally, Defendants have now confirmed that De Tomaso contracted with various New York-based companies for services to be performed in New York. *See M&J Mech. Corp. v. Caldwell & Walsh Bldg. Constr., Inc.*, No. 24-CV-03336 (MMG) (RWL), 2025 WL 1898579, at *1 (S.D.N.Y. July 9, 2025) (citing C.P.L.R. § 302(a)(1): "The Court has personal jurisdiction over Defendants based on their having contracted for work with a New York entity to be performed in New York."). In particular, De Tomaso contracted with Cipriani restaurant in New York City to host the Meet Isabelle event and engaged with various New York-based marketing companies Wistar Productions, Tangent Vector, and 24helps, as well as a New York-based photography studio, Canoe Studios, for purposes of promoting Jorda's engagement with De Tomaso and the Meet Isabelle event. (*See* Liu Decl. Ex. F [DeTomaso Interrog. Resp. Nos. 6, 7].) These activities with New York companies were performed in connection with Jorda's promotional work for De Tomaso in New York, which included her photoshoot and the Meet Isabelle event, thus establishing the requisite nexus with Jorda's claims. Accordingly, both prongs under the long-arm jurisdiction statute have been satisfied.

### E.     De Tomaso Invoked the Benefits and Protections of New York Law in a Recent Cease-and-Desist Letter

"[F]ederal due process concerns are satisfied where the defendant's activities 'constitute purposeful efforts to invoke the benefits and protection of New York law.'" *On Line Mktg. Inc. v.*

*Thompson Outfitters, Inc.*, No. 99 CIV. 10411 (HB), 2000 WL 426426, at *2 (S.D.N.Y. 2000). On April 11, 2024, De Tomaso served Plaintiff a cease-and-desist letter alleging that Plaintiff had infringed on De Tomaso's marks, trade name, and branding. (Liu Decl. ¶ 5, Ex. H.) In the letter, De Tomaso referenced Jorda's work with De Tomaso "on discrete marketing campaigns for a limited time," but alleged that Jorda had no right to use De Tomaso's marks or trade name for self-promotion, citing N.Y. General Business Law §§ 360-K and 360-L regarding trademark infringement and dilution. By invoking the benefits and protections of New York trademark laws, De Tomaso purposefully availed itself of the privilege of conducting activities within the forum state. Accordingly, the first prong of the test for jurisdiction under C.P.L.R. § 302(a)(1) is further satisfied by this act alone.

### F. There Is Specific Jurisdiction Over Choi Who Was Personally Involved with Jorda's Work on Behalf of De Tomaso in New York

"In cases involving corporate defendants, a court's exercise of personal jurisdiction over a corporation's officer is predicated on a showing that the officer engaged in <u>personal</u> conduct that is related to the transaction that underlies the claim." *Cullum v. Wyndham Hotels & Resorts Corp.*, No. 1:22-CV-09700-LTS-SN, 2024 WL 552494, at *8 (S.D.N.Y. Feb. 12, 2024), *reconsideration denied*, 2024 WL 3104517 (S.D.N.Y. June 24, 2024), *aff'd*, No. 24-1949, 2025 WL 2020942 (2d Cir. Apr. 10, 2025) (emphasis in orig.) (quoting *Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 336 (E.D.N.Y. 2021)).

"Where Plaintiffs do not allege any personal involvement, section 302(a) also permits the exercise of personal jurisdiction under agency theory." *Id.* (citing *Group One Ltd.*, 523 F. Supp. 3d at 337-38). "If a corporation is subject to personal jurisdiction in the state, a corporate officer who 'played a part in the [corporate] activities that gave rise to the action' is also subject to

11

jurisdiction as a result of the agency relationship between the two." *Id.* (citing *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019)). "To establish an agency relationship for the purposes of the New York long-arm statute, a plaintiff must 'convince the court that [the corporation] engaged in purposeful activities in this State in relation to [Plaintiff's] transaction for the benefit of and with the knowledge and consent of the [individual defendant] and that [the individual defendant] exercised some control over [the corporation] in the matter.'" *Id.* (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008)).

Here, Choi confirms that he and Berris were the sole directors of De Tomaso from September 3, 2020 to May 3, 2022, and Choi became the sole director from May 3, 2022 to present. (Liu Decl. Ex. F [DeTomaso Resp. Interrog. No. 13].) Choi admits that "he at times traveled to New York to meet with Berris related to De Tomaso business," which included nine separate occasions for work relating to De Tomaso. (Liu Decl. Ex. A [Choi RFA Resp. Nos. 1, 16]; Ex. C [Choi Resp. Interrog. Nos. 1, 12].) Berris attested that he and Choi were regularly in New York following the lifting of COVID-19 travel restrictions in July 2021, and that he and Choi "were simultaneously present in New York on a regular basis conducting De Tomaso business, either in person or virtually," which included 36 meetings between 2021 to 2022. (Berris Decl. iso Opp. MTD, Ex. A [ECF No. 64-14], ¶ 3.) Choi confirms that at least 22 meetings between him and Berris took place in New York during this time. (Liu Decl. Ex. C [Choi Resp. Interrog. No. 22].)

Defendants confirm that Choi met with Jorda on at least four occasions in New York for De Tomaso business. (Liu Decl. Ex. C [Choi Interrog. Resp. No. 14].) Jorda travelled with Choi and Berris to a test track in Greenwood Lake Airport, New York, on September 10, 2021, to test drive the De Tomaso P72 car. (Jorda Decl. ¶ 6; Liu Decl. Ex. D [DeTomaso RFA Resp. No. 19].) Jorda travelled with Choi and Berris to the Hamptons in New York to attend a car show known as

12

"The Bridge" on September 18, 2021. (Jorda Decl. ¶ 7; Liu Decl. Ex. D [DeTomaso RFA Resp. No. 18].) Finally, Choi met with Jorda at the Meet Isabelle event in New York City on September 16, 2021, as shown in the photo below. (Jorda Decl. ¶ 12, Liu Decl. Ex. A [Choi RFA Resp. No. 11], Ex. C [Choi Interrog. Resp. Nos. 1, 12].)



(Jorda Decl. Ex. D [ECF No. 64-12, p. 9 of 9] cropped photo showing from left to right: Choi, Berris, Jorda, and De Tomaso driver Hugo de Sadeleer at the Meet Isabelle event in New York City on September 16, 2021.)

Even if Defendants argue that Berris exceeded his authority on behalf of De Tomaso and that Choi was not personally involved in De Tomaso's contract negotiation, execution, or performance with Jorda, Choi is nonetheless subject to jurisdiction as an agent of De Tomaso, by having knowledge of, and consented to, De Tomaso's agreement with Jorda. Choi having met with Jorda and participated with her in various De Tomaso business activities in New York, all of which

13

were within Jorda's scope of work for the benefit of De Tomaso, easily shows Choi is an agent of De Tomaso.

## III. SHOULD THE COURT HAVE ANY DOUBTS REGARDING PERSONAL JURISDICTION, IT SHOULD ISSUE FURTHER ORDERS ON UNRESOLVED JURISDICTIONAL DISCOVERY ISSUES

As of the date of this Report, Plaintiff has submitted a letter brief to the Court detailing several unresolved discovery disputes concerning Defendants' responses and objections to Plaintiff's discovery requests. (ECF No. 101.) In particular, Defendants contend that Plaintiff was not permitted to propound Requests for Production of Documents ("RFPs") pursuant to the Court's jurisdictional discovery order (ECF No. 98), and thus have served blanket objections to Plaintiff's requests. (Liu Decl. Exs. B, E.) Despite their objections, Defendants served documents at the same time as their objections. Without written responses, however, Plaintiff cannot determine whether Defendants engaged in a diligent search or reasonable inquiry for documents responsive to the Order or Plaintiff's RFPs. Indeed, numerous categories of relevant documents appear to be missing or withheld without any explanation, including documents relating to Choi's purchase and use of the 35 Hudson Yards apartment and any communications by Choi, including those related to Jorda or De Tomaso's business activities in New York. (Liu Decl. ¶ 6.) As explained in the letter brief, Defendants have also adopted an improperly restrictive definition of the parties to intentionally exclude companies owned or controlled by Choi under which he transacts much of his business, including the purchase of the 35 Hudson Yards apartment.

Defendants, on the other hand, contend that the Court's order permitting "25 Interrogatories per Defendant (50 total)" and "25 Requests for Admission per Defendant (50 total)" mean that such requests may be *propounded* by each Defendant as opposed to being *directed* to

them. Defendants each propounded 25 interrogatories and 25 RFAs to Plaintiff based on this erroneous interpretation of the Court's orders. Furthermore, despite the three categories of documents described in the Court's order relating specifically to De Tomaso and Choi's corporate activities, presence, transactions, and business dealings in New York, Defendants adopted a further unreasonable position that *Plaintiff* was required to produce documents responsive to these categories, despite nothing in the Order suggesting so. (ECF No. 103.) Defendants notably did not serve any RFPs to Plaintiff identifying any categories of documents of which they believe Plaintiff maintains possession, custody or control. (Liu Decl. ¶ 7.)

Plaintiff contends that the existing evidence and record should sufficiently establish personal jurisdiction over Defendants. Should the Court find that certain factual issues remain unresolved, however, it should grant Plaintiff's pending request for an IDC and issue orders clarifying the scope of discovery and extending the discovery deadline as necessary.

Dated:  October 14, 2025
         Los Angeles, CA                    **FROST LLP**

_____
Gregory A. Thomson (NY Bar No. 4280020)
FROST LLP
276 Fifth Avenue, Suite 712
New York, NY 10001
Telephone: (646) 516-6628
gthomson@frostllp.com

Christopher L. Frost (*pro hac vice*)
John D. Maatta (*pro hac vice*)
Lawrence J.H. Liu (*pro hac vice*)
FROST LLP
10960 Wilshire Blvd., Suite 2100
Los Angeles, CA 90024
Telephone: (424) 254-0441
chris@frostllp.com
john@frostllp.com
lawrence@frostllp.com

*Attorneys for Plaintiff Carmen Jorda*